36 F.3d 1094
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry FAIRCLOTH, Defendant-Appellant.
 No. 94-5040.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 25, 1994.
Decided Sept. 23, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., Chief District Judge. (CR-92-139)
 Steven M. Askin, Askin, Burke & Schultz, Martinsburg, WV, for Appellant.
 William D. Wilmoth, U.S. Atty., Thomas O. Mucklow, Asst. U.S. Atty., Wheeling, WV, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 
 OPINION
 PER CURIAM
 
 1
 Terry Faircloth pled guilty to possession of marijuana with intent to distribute, 21 U.S.C.A. Sec. 841 (West 1981 & Supp.1994), and was sentenced to a term of twenty-one months imprisonment. On appeal, Faircloth challenges the district court's determination that 10-20 kilograms of marijuana were attributable to him under USSG Sec. 2D1.1,[1] its application of a two-level adjustment for reckless endangerment during flight, USSG Sec. 3C1.2, and its decision not to award him a three-level reduction for acceptance of responsibility, USSG Sec. 3E1.1(b). We affirm.
 
 
 2
 Driving on a secondary road in West Virginia in November 1991, Faircloth encountered a deer decoy which had been placed near the road by the county sheriff and Marcus Findley, a state conservation officer, as part of an investigation into illegal hunting. Faircloth took a shot at the deer decoy from his truck, then drove on. Findley was alerted by the sheriff and forced Faircloth's vehicle to a stop a few minutes later. Findley asked the passenger in the truck to get out and saw two rifles next to Faircloth, the driver. He removed both rifles and then saw on the seat a pipe used to smoke marijuana and a plastic bag containing what appeared to be marijuana.
 
 
 3
 Findley testified at a later suppression hearing that when he stepped to the rear wheel of the truck to examine the contents of the bag, he heard Faircloth restart the truck's engine and put it in reverse. Ignoring Findley's order to stop, Faircloth backed up, making gravel fly. To avoid being hit by the open passenger-side door, Findley jumped into the truck. A struggle ensued in which Faircloth's nose was broken before Findley succeeded in turning off the truck engine, pushing Faircloth out of the truck, and handcuffing him. Faircloth maintained that he did not restart the engine or back up. He said Findley climbed into the truck and punched him several times because he took his hands off the dashboard.
 
 
 4
 Faircloth was carrying $6945 in cash. After his truck was impounded, nearly five pounds of marijuana was discovered behind the front seat, packaged in one-pound bags. Faircloth initially went to trial on charges of conspiracy, possession with intent to distribute, and two distribution counts. After a mistrial, he entered a guilty plea to the charge of possession with intent to distribute; his plea came one day before his second trial was scheduled to begin.
 
 
 5
 The parties stipulated in the plea agreement that the government could readily prove Faircloth's involvement with 5-10 kilograms of marijuana. The agreement gave notice that the district court was not bound by the stipulation. The probation officer subsequently recommended a finding that Faircloth was involved with 10-20 kilograms of marijuana. The recommendation was based on the probation officer's review of statements made during debriefing by David Puffinberger, a customer of Faircloth's who had recently been prosecuted. The probation officer also recommended an adjustment for reckless endangerment during flight, and a two-level adjustment for acceptance of responsibility. At the sentencing hearing, the district court adopted all these recommendations.[2]
 
 
 6
 Faircloth first contends that there was no reliable evidence of his involvement with more than the 5-10 kilograms of marijuana stipulated in the plea agreement. He points out that Puffinberger had other sources for marijuana besides him, a fact that he alleges the probation officer ignored. However, the district court found that the report of Puffinberger's debriefing made by the West Virginia State Police had not been shown to be either inaccurate or unreliable. United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990) (defendant has burden of showing inaccuracy of information in presentence report which he disputes). Based on that report, with which all parties appeared to be quite familiar, the court made its own conservative estimate of the amount of marijuana Puffinberger bought from Faircloth over a fouryear period, and determined that it was probably around forty-six kilograms. Although this amount would have yielded a base offense level of twenty, the court simply found that the relevant conduct was at least 10-20 kilograms, making Faircloth's base offense level sixteen. Faircloth produced no evidence on which we could find that the district court's determination was clearly erroneous. United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir.) (factual findings reviewed for clear error), cert. denied, 60 U.S.L.W. 3879 (U.S.1992).
 
 
 7
 An adjustment for reckless endangerment during flight is justified when the defendant recklessly created a substantial risk of death or serious bodily injury to another. USSG Sec. 3C1.2. Reckless conduct occurs when the defendant is aware of the risk he creates and the risk is such that to disregard it constitutes a gross deviation from the standard of care that a reasonable person would exercise in such a situation. USSG Sec. 2A1.4, comment. (n.1). In the district court, Faircloth flatly denied moving his truck after he was stopped, and claimed he was beaten by Findley because he took his hands off the dashboard. However, the district court credited Findley's account, and found that Faircloth had recklessly endangered the officer.
 
 
 8
 On appeal, Faircloth argues that there was insufficient evidence that he did anything which could be construed as reckless endangerment, even if Findley's account is taken as true. This argument was not made in the district court, and it is reviewed under a plain error standard. United States v. Bornstein, 977 F.2d 112, 115 (4th Cir.1992). Once Faircloth began backing his truck rapidly, there was obvious danger of injury to the officer standing in the path of the open truck door. We find that the district court did not plainly err in finding that Faircloth created a substantial risk of serious bodily injury to Findley.
 
 
 9
 Last, we find no error in the district court's denial of a three-level reduction for acceptance of responsibility. The extra level may be given under section 3E1.1(b) if the court finds that the defendant has assisted authorities by timely providing complete information about his involvement in the offense to the government or by timely giving notice that he intends to plead guilty. Faircloth did neither.
 
 
 10
 Accordingly, the sentence imposed by the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1993)
 
 
 [2]
 The district court declined to adopt a recommended enhancement for possession of a firearm under USSG Sec. 2D1.1(b)(1)